OPINION OF THE COURT
C. Raymond Radican, J.
In this proceeding to fix attorneys’ fees, the petitioners move to reargue so much of the decree of July 10, 1990 as granted the executor, William J. Hofmann, executor’s commissions over their claim that such commissions had been waived.
The initial waiver is claimed to have occurred in a prior proceeding by the petitioners to compel payment of their distributive shares pursuant to SCPA 2102. During that proceeding and in answer to a question by the court put to Mr. Hofmann, he stated, "At this particular point in time I have waived my commissions” and indicated further that it was pursuant to discussions and conversations with the petition *871 ers. However, Mr. Hofmann now claims the waiver was of a temporary nature made to facilitate the distribution of funds to petitioners as demanded by them in that proceeding pending the release of certain estate assets. This contention is only obliquely disputed by petitioners, and the very words Mr. Hofmann used, "At this particular point in time I have waived my commissions” lends some credence to the limited nature of the waiver.
In other proceedings brought by petitioners to remove Mr. Hofmann’s coexecutor, Robert C. Adams, and to compel him to account, a stipulation dated January 11, 1985 was entered into providing among other things for the resignation of Mr. Adams, his waiver of commissions, the completion of his accounting, the turnover of all assets to his coexecutor, Mr. Hofmann, and the latter’s continuation as coexecutor. The decree of June 10, 1985 implemented the settlement agreement and settled Mr. Adams’ account. While Mr. Adams’ accounting covered a schedule relating to commissions, none were allowed in the decree settling his account either to him or to Mr. Hofmann. To the extent the prior decision of March 29, 1990 (decision No. 267) stated the contrary and indicated the allowance of commissions to Mr. Hofmann by that decree was no longer subject to attack, it is withdrawn.
Nevertheless, while the decree of June 10, 1985 did not allow Mr. Hofmann any commissions, neither did it disallow them, being completely neutral. The signing of the decree itself without allowing any commissions to Mr. Hofmann cannot be considered a waiver, since it was not his accounting, but that of his coexecutor. Moreover, he was continuing on as sole executor and it can logically be concluded that the fixation of his commissions (provided there is no other viable waiver) was being postponed to the final accounting.
Thereafter, in an attempt to settle his account, Mr. Hofmann’s attorneys forwarded to petitioners an informal accounting which did not provide for any commissions for Mr. Hofmann, together with a receipt and release which expressly waived such commissions. The petitioners modified the receipt and release and instead of approving the informal account, merely acknowledged receipt of it. The receipt and release also discharged Mr. Hofmann from any and all liability, but reserved petitioner’s rights to have the fees of the attorneys fixed and to obtain a refund of any overpayment. Following the circulation of the informal accounting and receipt and *872 release, the entire estate was distributed except for a very small amount.
In his 10th affirmative defense and counterclaim, Mr. Hofmann states that following the resignation of Robert C. Adams as fiduciary he did not demand payment of commissions allowable by law "[a]s a courtesy to petitioners and to facilitate the completion of the administration of the Estate.” In addition, he states in paragraph 18th of the same defense and counterclaim that "[a]t the request of petitioners, respondent William J. Hofmann made a complete and final distribution of all assets and property of the Estate of Eleanor L. Wood to petitioners without reserving any sum for allowance of statutory fiduciary commissions.” While he states that following Mr. Adams’ resignation he did not demand commissions as a "courtesy” to the petitioners, nevertheless he admits he made "a complete distribution of all assets of the estate” without reserving his statutory commissions. That act in and of itself was totally inconsistent with his present demand and an implicit waiver of commissions (In re Carrington, 86 NYS2d 425).
Generally in the case of a surcharge, a representative has been permitted to withdraw his unilateral renunciation of commissions in order to take them and apply them against the surcharge (In re Keeler, 49 NYS2d 592). Of course, if the initial waiver made before the court is construable as bilateral and not temporary, then this rule would not appear to apply. In any event, Mr. Hofmann has not been surcharged here. His attorneys have merely been directed to refund excess fees. A receipt and release signed by the petitioners unconditionally releases him from any liability whatsoever. Under those circumstances, the petitioners have limited themselves solely to pursuing the attorneys with no relief over against Mr. Hofmann should the amounts not be recovered. Therefore, there being no liability whatsoever on Mr. Hofmann’s part or possible surcharge, and he having distributed the entire estate without reserving his rights to commissions, the motion to reargue is granted, and upon reargument the decision of July 10, 1990 and the decree of June 10, 1985 is modified to the extent of disallowing commissions to Mr. Hofmann on the ground of their waiver.
Respondent’s assertion that the motion is untimely is not *873 well taken as the application was made before the time for appeal had expired (Foley v Roche, 68 AD2d 558, 567-568), having actually been served before movants made service of the decree of the court.